```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   TITUS JERMAINE CAMERON,                                  :
                                                            :   **MEMORANDUM DECISION**
                                    Plaintiff,              :   **AND ORDER**
                                                            :
               - against -                                  :   20-cv-2138 (BMC)
                                                            :
   COMMISSIONER OF SOCIAL                                   :
   SECURITY,                                                :
                                                            :
                                    Defendant.              :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

      Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled as defined by the Social Security Act for the purpose of receiving supplemental security income benefits. His alleged onset date was October 1, 2015, and the ALJ's decision was dated November 26, 2018. The ALJ found that plaintiff had severe impairments of hernia, schizoaffective disorder, cannabis abuse, and cocaine dependence. Notwithstanding these severe impairments, the ALJ found that plaintiff had sufficient residual functional capacity to perform medium work, except that he could understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, and occasionally deal with changes in a routine work setting and with coworkers and the public. After the submission of new evidence to the Appeals Council, the Appeals Council denied plaintiff's petition for review, finding that the new evidence did not raise a reasonable probability that the ALJ would have reached a different decision.

      In this review proceeding, plaintiff raises three points of error: (1) that the ALJ should have further developed the record by soliciting opinion evidence from plaintiff's treating

physicians, as the record contained no treating physician opinions; (2) that the Appeals Council should have remanded based on evidence supplied by plaintiff's newly retained counsel at the Appeals Council level, consisting of both treating and consultative opinions that the ALJ did not have; and (3) the ALJ failed to adequately address plaintiff's subjective statements relating to his disability.

With regard to plaintiff's first point of error, I agree that because plaintiff was *pro se* when appearing before him, the ALJ had a heightened obligation to make sure the record was complete, beyond his usual obligation when a claimant is represented. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 509 (2d Cir. 2009). I further agree with plaintiff that because he has a severe mental impairment, that obligation was heightened even further. See Maldonado v. Comm'r of Soc. Sec., No. 19-cv-3319, 2021 WL 864203, at *7 (S.D.N.Y. March 9, 2021).[1]

However, I disagree with plaintiff's argument that the ALJ's obligation extended to attempting to have treating providers actually draft opinions that they had not drafted before. See Ambrose v. Comm'r of Soc. Sec., No. 19-cv-3522, 2021 WL 308276, at *2 (E.D.N.Y. Jan. 29, 2021). My view is that under the regulations, the Commissioner's effort to obtain opinion evidence (as opposed to treatment records) is only with regard to consultants (or to pre-existing treating physician opinions). Retained medical consultants and experts are paid a fee to examine the claimant and/or review the records, and then to express an opinion on what they find. A

---

[1] Mitigating these considerations somewhat is that the notice of the hearing before an ALJ advises claimants of their right to representation, including the possibility of *pro bono* or contingent fee representation. In New York, the Social Security Administration provides a source for *pro bono* representation. See Soc. Sec. Admin., Pub. No. 05-10075, Your Right to Representation, https://www.ssa.gov/pubs/EN-05-10075.pdf (last visited Apr. 28, 2021) ("Pub. No. 05-10075") (noting that "[y]our Social Security office has a list of organizations that can help you find a representative"); see also Legal Aid Soc'y, Social Security and SSI Hearings and Appeals, https://www.lawhelpny.org/resource/social-security-and-ssi-hearings-and-appeals (last visited Apr. 28, 2021) (stating that "[y]our Social Security office can help you if you have trouble finding a representative" and providing a resource for finding free legal services providers). The Social Security Administration also distributes a booklet on the right to representation, available by telephone or online. See Pub. No. 05-10075.

treating physician is not, and the ALJ has no power to compel a treating physician to do so. Id. Yet whether such opinions would be sought by subpoena or mere request, it would still be a solicitation by a government agency. Requiring it in every case where a treating physician's records do not contain opinion evidence as to residual functional capacity would create the risk of making treating physicians think that giving an expert opinion is legally required.[2]

The extra time and cost of a burdensome process would fall on the treating physicians who, under today's medical practice, already have so much paperwork to complete that it raises questions as to whether the time involved to do so compromises patient care. As one commentator has noted:

> Much of a physician's day is spent maintaining the patient health record. Not only has this negatively impacted job satisfaction for residents and attending physicians, but it also may be significantly reducing available time for patient care and negatively impacting patient outcomes. In a 2013 poll, 92% of residents reported that clinical documentation obligations are excessive, and 73% of residents reported compromises in patient care by these requirements.

James E. Siegler, Neha N. Patel & C. Jessica Dine, Prioritizing Paperwork over Patient Care: Why Can't We Do Both?, 7 J. Grad. Med. Educ. 16, 16 (2015) (footnotes omitted), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4507919.

Even if treating physicians complied with an ALJ's demand to draft an opinion, I have no basis to conclude that the benefits of demanding treating physician opinions would outweigh the additional burden, as of course some percentage of those opinions, perhaps even a substantial majority, would have no effect on the outcome of the proceeding. Unless the regulations are

---

[2] Plaintiff cites several district court cases that required the ALJ to obtain opinion evidence from treating physicians. See, e.g., Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991). The Commissioner responds with citations to others that do not, see, e.g., Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order), including my own recent decision in Ambrose, 2021 WL 308276, at *2. Although plaintiff argues in reply that these cases are inapposite because they did not involve *pro se* claimants, my view is that the better-reasoned approach is that the duty to develop the record does not extend that far.

changed to expressly require treating physicians to consider and create opinions, which might well require congressional authorization, the courts should not supplement them.[3]

My conclusion on plaintiff's first point of error, however, tends to lend weight to plaintiff's second point – that the Appeals Council should have remanded in light of new evidence. The emergence of these new opinions at the Appeals Council level followed a practice that I have seen used by plaintiff's counsel, which is one of the preeminent claimants' law firms in social security disability cases: after the claimant has obtained an unfavorable decision from the ALJ (whether *pro se* or with representation), the claimant then engages current counsel, who then refers plaintiff for additional opinions (from either consultants or treating physicians), and presents those opinions to the Appeals Council as new evidence requiring remand. For the same reasons identified above – plaintiff's *pro se* status before the ALJ and his severe mental impairment – I agree that the Appeals Council should be especially careful in considering such evidence if it meets the requirements of the regulations.

The additional evidence submitted to the Appeals Council here consisted of opinions from the following professionals: (1) Janika Emmanuel, a nurse practitioner who stated that she saw plaintiff on a monthly basis from September 2015 through January 2019; (2) Dr. Derrick Tolbert-Walker, a family practitioner who began treating plaintiff in mid-2015; and (3) James Ellis, a consulting psychologist who examined plaintiff in May 2019. The Commissioner seems to concede that this evidence meets the threshold requirements for consideration at the Appeals Council level. See 20 C.F.R. § 416.1570(a)(5), (b). But the Commissioner argues, as the

---

[3] The Commissioner argues that since the treating physician opinions in this case were submitted to the Appeals Council, the issue of whether the ALJ should have solicited them is "moot." It is not moot. The Commissioner argues that the Appeals Council did not err in finding those opinions inadequate because the standard for consideration before the Appeals Council is narrow, akin to certiorari review. See Pollard v. Halter, 377 F.3d 183, 192 (2d Cir. 2004). Because of the different standards of review by the ALJ and the Appeals Council, a new submission to the Appeals Council is independent of any obligation on the part of the ALJ to obtain more evidence.

Appeals Council held, that this evidence did not raise a "reasonable probability" that the additional evidence would have changed the ALJ's decision. See, e.g., Cook v. Comm'r of Soc. Sec., 818 F. App'x 108, 110 (2d Cir. 2020) (summary order) (applying a "reasonable probability" standard to Appeals Council review); Blash v. Comm'r of Soc. Sec. Admin., 813 F. App'x 642, 645 (2d Cir. 2020) (summary order) (same).

Putting aside the fact that NP Emmanuel does not attract the treating physician rule, since she is not a physician, the first problem with plaintiff's theory is the lack of evidence that NP Emmanuel ever treated plaintiff at all. Plaintiff concedes that the record does not contain any treatment notes from NP Emmanuel. It appears that she never met plaintiff, or at least not until she gave her opinion in January 2019, a few months after the ALJ had rendered his decision. For instance, the questionnaire asked the following question: "How often do you see your patient?" NP Emmanuel answered "monthly," listing the date of first treatment as September 3, 2015. But that is the date when a colleague at the same facility, NP Elizabeth Chang, first saw plaintiff. There is no indication in the record that NP Emmanuel had any contact with plaintiff or even spoke to NP Chang about plaintiff.

That might not be a problem if there was a solid treatment record from NP Chang upon which NP Emmanuel was relying, but there is no sign of that. After NP Chang first evaluated plaintiff in September 2015, plaintiff did not see NP Chang again until June 2016, a few months after the initial denial of his disability application (though NP Chang noted that plaintiff had visited the clinic the previous month after "hearing voices"). Then, in December 2017, NP Chang rendered a very conclusory, three-sentence "to whom it may concern" letter, itself entitled to little or no weight, which had been submitted to the ALJ.[4]

---

[4] The full substance of the letter stated:

Despite NP Chang's letter stating that plaintiff had been "under [her] care" since September 2015 and NP Emmanuel's medical source statement saying that someone had seen plaintiff "monthly" since September 2015, there is not a single treatment note from NP Emmanuel in the record, and the treatment notes from NP Chang are few and far between. This is significant, for it must be remembered that by the time of NP Emmanuel's opinion, plaintiff's counsel was on the case, attempting to obtain further records and develop more opinions. In other words, if there were additional treatment notes from those two nurse practitioners, plaintiff's experienced counsel would have tried to obtain them. Therefore, it is not reasonably probable that, standing alone, an unsupported medical source statement from a non-physician would change the ALJ's decision.

Plaintiff further relies on Dr. Tolbert-Walker's February 5, 2019 submission to the Appeals Council. The questionnaire that Dr. Tolbert-Walker completed concerned plaintiff's HIV diagnosis. Dr. Tolbert-Walker reported that he had seen plaintiff about every three months beginning prior to the alleged onset date to check on his positive HIV status, the prognosis for which he wrote was "chronic-stable HIV disease." Dr. Tolbert-Walker left blank the sections of the questionnaire containing a checklist of symptoms, but he noted that there was evidence of weight loss.

Much of Dr. Tolbert-Walker's evaluation was benign – for example, he opined that plaintiff could sit for six or more hours and could stand or walk for two hours in an eight-hour workday. Other parts of the opinion, however, warrant close consideration. Dr. Tolbert-Walker opined that plaintiff would need to take a bathroom break every hour and that plaintiff could not

---

[Plaintiff] was seen in my office on 12/14/2017. He has been under my care for schizophrenia since 9/3/2015. He is permanently disabled and continues to show signs of significant impairment due to his mental illness. I do not foresee [plaintiff] being able to function successfully in a work environment.

6

return to a seated position for 15-20 minutes. That obviously is relevant to his functional capacity. When asked how often plaintiff's "experience of pain, fatigue, or other symptoms [would] be severe enough to interfere with attention and concentration," Dr. Tolbert-Walker checked "frequently," which was defined in the question as one-third to two-thirds of an eight-hour workday. Dr. Tolbert-Walker also opined that plaintiff's impairments would keep him out of work for more than three days per month.

Dr. Tolbert-Walker's opinion was not out of the blue. A questionnaire he had completed for the Social Security Administration in February 2016 had noted HIV infection with wasting syndrome, stating that one of the manifestations of his HIV infection was "a significant weight loss over the prior six months with chronic diarrhea." There are also treatment notes that at least arguably support the opinions he expressed.

However, both the 2019 opinion as to plaintiff's need for bathroom breaks and the 2016 opinion as to his chronic diarrhea were arguably inconsistent with other parts of the 2019 opinion. In the 2019 opinion, when asked if there was "evidence of wasting syndrome," Dr. Tolbert-Walker checked "No." And although Dr. Tolbert-Walker answered "Yes" when asked if plaintiff would "need to take unscheduled breaks to rest at unpredictable intervals during an 8-hour workday," when Dr. Tolbert-Walker was asked how often he thought this would happen, he first wrote "every hour" but then crossed that out and substituted "once or twice a day" for 20 minutes.

Any discrepancies, however, are reconcilable. Dr. Tolbert-Walker's opinion that plaintiff needs to take bathroom breaks every hour for 15-20 minutes cannot be read too broadly. A person in that condition would not just be suffering from chronic diarrhea, and not even from wasting syndrome (which Dr. Tolbert-Walker disclaimed as of 2019); that person would need to

7

be hospitalized and given intravenous fluids constantly or he would die from dehydration. In context, it seems clear that Dr. Tolbert-Walker meant that when plaintiff has an attack of chronic diarrhea, it incapacitates him. And it happens often enough that he is going to miss more than three days of work per month.

Thus understood, Dr. Tolbert-Walker's 2019 opinion flatly contradicts the hypothetical that the ALJ put to the vocational expert at the hearing. The VE was clear that there are no jobs in the national economy for someone who is going to miss four days of work per month, be off-task for more than 15 percent of the workday, and have to take breaks from work beyond those regularly scheduled. That is precisely the profile that Dr. Tolbert-Walker described in his 2019 opinion.

The Commissioner's arguments in seeking to dispense with Dr. Tolbert-Walker's report are not convincing. The Commissioner asserts that the ALJ (1) "considered the possibility of this limitation in the hypothetical questions posed to the vocational expert" and (2) "ultimately concluded that the record did not support such a limitation" (*i.e.*, absent more than three times per month). The first argument is a non-sequitur because, as noted above, when the ALJ put that limitation to the expert, the expert said there was no work for someone with that level of impairment. And the second argument begs the question because the ALJ did not have Dr. Tolbert-Walker's opinion before him.

The Commissioner also points out that there are references in some of Dr. Tolbert-Walker's treatment notes that plaintiff reported that he was generally feeling well, that he had no "new" complaints, and that he stopped losing weight. Those snippets have to be measured against the entire body of treatment notes and plaintiff's testimony. Viewed in isolation, as the Commissioner presents them, all they show is that the ALJ needs to engage in the balancing of

8

evidence that is required when an ALJ considers a treating physician's opinions, something he has not had the opportunity to do.

There may be reasons why Dr. Tolbert-Walker's opinion should not be given controlling weight on remand, but they are not self-evident. It must be remembered that this is a pre-March 27, 2017 claim, so the treating physician rule, which effectively creates a rebuttable presumption in favor of a treating physician's opinion, controls this case. See, e.g., Jenkins v. Comm'r of Soc. Sec., No. 19-cv-6040, 2021 WL 1176106, at *1 n.1 (E.D.N.Y. March 29, 2021) (citing 20 C.F.R. §§ 404.1527, 404.1520c). Dr. Tolbert-Walker's opinion is based on a long-term relationship with plaintiff; his 2019 opinion is largely consistent with his 2016 opinion; and although there were some appointments when plaintiff was doing well, there were others when he was not. Particularly considering plaintiff's severe mental impairment and *pro se* status before the ALJ the first time, when he obviously had no idea of how to submit an HIV questionnaire to his treating physician, he is entitled to that opportunity.

A "reasonable probability" cannot mean a level of such certainty that the case should be remanded only for the calculation of benefits. Rather, it must mean that if the new evidence warrants consideration and is accepted on remand, then a favorable award will obtain. That is the situation here. The original record contained no opinions of any treating physician, one way or the other. Now it does, and Dr. Tolbert-Walker's opinion, on its face, is a strong one. That dramatically changes the record. It should be up to the ALJ, not me, to determine whether to accept it or explain why the opinion should not be accepted.

Since I am remanding the case for consideration of Dr. Tolbert-Walker's opinion, I will also briefly note the newly obtained opinion of consultative psychologist James K. Ellis, who

9

evaluated plaintiff once plaintiff's current attorneys were engaged.[5] It suffices to state that although I would not remand on the basis of Dr. Ellis's opinion alone, the ALJ should consider it along with the other evidence in the record, including the recently submitted evidence from plaintiff's nurse practitioner.

Finally, I need not determine whether the ALJ inadequately evaluated plaintiff's subjective testimony. That testimony may be seen in a different light based on the medical evidence that the ALJ is going to consider.

Plaintiff's motion for judgment on the pleadings [12] is granted, and the Commissioner's cross-motion for judgment on the pleadings [15] is denied. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the case is remanded so that the ALJ can convene a new hearing at which the evidence presented to the Appeals Council can be considered in conjunction with the other parts of the record.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
      April 28, 2021

---

[5] Just as the Commissioner will often refer claimants for consultative examinations to physicians and psychologists to whom the Commissioner has made prior referrals, plaintiff's counsel also has previously referred clients to Dr. Ellis in other cases – sometimes, as in the present case, where Dr. Ellis's reports are submitted to the Appeals Council. See, e.g., Mendoza v. Berryhill, 287 F. Supp. 3d 387, 394 (S.D.N.Y. 2017).